Robert S. Portegello
Attorney for Defendant Hangzhou
Law Office of Robert S. Portegello, P.C.
108 Main Street
Staten Island, NY 10307
SDNY Bar #: RSP8770
(718) 984-6684

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

DELTA MARINE CO. LTD.

                     Plaintiff,

    -against-

HANGZHOU JINZHAO INDUSTRY CO.
LTD., RICHFULL GROUP (HK) LIMITED,

                     Defendants.
-----------------------------------------------------------x

ECF CASE

07 Civ 4824 (GEL)

**AFFIDAVIT OF ROBERT S. PORTEGELLO IN SUPPORT OF MOTION TO DISMISS FOR FORUM NON CONVENIENS IMPROPER VENUE AND TO RECALL AND QUASH WRIT OF ATTACHMENT**

ROBERT S. PORTEGELLO, being duly sworn, deposes and says:

1. I am an attorney at law and attorney for Defendant HANGZHOU JINZHAO INDUUSTRY CO. I submit this affidavit in support of the motion of Defendant to dismiss the complaint of DELTA MARINE on the grounds of forum non conveniens and improper venue and to recall, vacate and quash the Writ of attachment issued by this court on or about June, 2007.

2. This action arises from a purported breach of a purported Discharge Agreement entered into on or about May 21, 2007 by the alleged terms of which Defendant HANGZHOU agreed to assume the obligation of a charterer named RICHFULL to Delta, Plaintiff herein.

3. The central allegation of the instant complaint is that Defendant HANGZHOU agreed to pay the Plaintiff DELTA the obligations of one RICHFULL with regard to a shipment of steel sent to Indonesia.

4. Defendant HANGZHOU challenges portions of the written contract that Plaintiff has presented to the court or referred in its pleadings as not the actual agreement. A true and correct copy of actual agreement signed by the parties is attached hereto as Exhibit "A" and made a part hereof.

5. Defendant HANGZHOU does not dispute, and both Plaintiff and the Defendant agree, that the Discharge Agreement does contain the following language:

"This agreement shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London."

6. The subject contract was entered into between a Chinese corporation and a Korean corporation, with regard to an ocean shipment of goods to Indonesia. All witnesses, documents, and evidence relating to the parties and this dispute are in China, Korea, and Indonesia, and none are in the United States or New York. There is no U.S. registered vessel involved.

7. One undisputed portion of the subject contract, as unforesaid, provides that English law shall govern and exclusive jurisdiction shall be in the High Court of Justice, London.

8. There is no contract attached to the complaint that counsel received. Attached hereto as Exhibit B and made a part hereof is a true and correct copy of the contract received from Plaintiff's counsel. The court is respectfully directed to paragraph 5 of this document setting forth exclusive jurisdiction in the High Court of Justice in London and English law. The dispute is thus about which contract is genuine. There is no dispute that both contracts contain an identical mandatory forum selection clause for the London High Court and English Law.

9. It will be in the interests of justice and more convenient for all parties for the forum selection clause of the written agreement to the enforced as agreed, i.e., in the High Court of Justice in London.

Wherefore, it is respectfully requested that an order be entered dismissing the action as to this moving Defendant, HANGZHOU, and an order withdrawing, vacating and quashing the writ of attachment issued by the court.

10. As to the fundamental fairness of the law of the chosen forum, England, the Fourth Circuit, quoting from the district court, observed: "United States courts have consistently found English tribunals to be neutral and just…." Allen v. Lloyd's of London, 94 F. 3d 923, 928 (4th Cir. 1996).

11. This court may also take judicial notice of the existence and organization of the Royal Courts of Justice, of which the High Court is one branch. As the court's website notes: "The High Court deals with higher level civil disputes." There are three divisions of the High Court, The Queens Bench Division, The Chancery Division and The Family Division.

                                                    Robert S. Portegello
                                                    Attorney for Defendant Hangzhou

                                                         SDNY Bar: RSP8770
                                      Law Office of Robert S. Portegello, P.C.
                                                     108 Main Street
                                          Staten Island, New York 10307
                                          Phone Number: (718) 984-6684
                                          Fax Number: (718) 984-6688

Subscribed and sworn before me on this ____ day of September, 2007

_____
Notary Public

PATRICIA HOLTERMANN
Notary Public, State of New York
No. 4830379
Qualified in Richmond County
Commission Expires 11/30/20__

# DISCHARGE AGREEMENT

DATED: 21 May 2007

BETWEEN:

(1) **Delta Marine Co. Ltd**, of Seoul, Korea ("Delta Marine"); and

(2) **Hangzhou Jinzhau Industry Co. Ltd**, of Shanghai, China ("Hangzhou");

referred to collectively in this Agreement as "the Parties"

**WHEREAS:**

1. Delta Marine, as disponent owners, chartered the vessel "Harutec" to Richfull (HK) Group Co Ltd. ("Richfull"), as charterers, under a charterparty dated 24 April 2007 (the "Charterparty"), a copy of which is herein attached at Annex 1 and forms part of this Agreement.

2. Pursuant to the terms of the Charterparty, Delta Marine loaded a cargo of 4,998.260 mt of concast steel slabs and 19,969.392 mt of prime steel billets (the "Cargo") for discharge at the nominated port of Cigading, Indonesia.

3. Due to outstanding hire due and owing from Richfull under the Charterparty, Delta Marine gave notice of lien over sub-freight and/ or sub-hire to Hangzhou, the shippers of the Cargo, on 11 and 17 May 2007, in accordance with clause 18 of the Charterparty, a lien which is hereby recognized as a valid and binding by Hangzhou and a copy of which is attached at Annex 2 and forms part of this Agreement.

4. The Parties have agreed that Hangzhou as a third party to pay the outstanding hire, the sum of US$29,975.45 for Richfull, In order to discharge the cargo at the port of Cigading on 23 May 2007.



Exhibit A

And for the consideration set out in this Agreement **IT IS AGREED** as follows:

1. Delta Marine will commence and continue the discharge of the Cargo at the port of Cigading until completion.

2. Hangzhou will pay Delta Marine the sum of US$29,975.45, which represents outstanding hire due and owing from Richfull, in full and without deduction before the end of the banking day of 23 May 2007.

3. This Agreement shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London.

Signed for and on behalf of Delta Marine Co. Ltd

Signed for and on behalf of **Hangzhou Jinzhau Industry Co Ltd**



# Exhibit A

21-MAY-21 13:18 FROM:DELTA MARINE CO LTD  822 774 0988          TO:+8621643865883          PAGE:003

# DISCHARGE AGREEMENT

DATED: 21 May 2007

BETWEEN:

(1) Delta Marine Co. Ltd, of Seoul, Korea ("Delta Marine"); and

(2) Hangzhou Jinzhou Industry Co. Ltd, of Shanghai, China ("Hangzhou");

referred to collectively in this Agreement as "the Parties".

WHEREAS:

1. Delta Marine, as disponent owners, chartered the vessel "Harutoc" to Richfull (HK) Group Co Ltd ("Richfull"), as charterers, under a charterparty dated 24 April 2007 (the "Charterparty"), a copy of which is herein attached at Annex 1 and forms part of this Agreement.

2. Pursuant to the terms of the Charterparty, Delta Marine loaded a cargo of 4,998.260 mt of concast steel slabs and 19,969.392 mt of prime steel billets (the "Cargo") for discharge at the nominated port of Cigading, Indonesia.

3. Due to outstanding hire due and owing from Richfull under the Charterparty, Delta Marine gave notice of lien over sub-freight and/ or sub-hire to Hangzhou, the shippers of the Cargo, on 11 and 17 May 2007, in accordance with clause 18 of the Charterparty, a lien which is hereby recognized as valid and binding by Hangzhou and a copy of which is attached at Annex 2 and forms part of this Agreement.



Exhibit B

27-MAY-21 13:18 FROM:DELTA MARINE CO LTD  852 774 ████    TO:█████████████    PAGE:004

And for the consideration set out in this Agreement IT IS AGREED as follows:

1. Delta Marine will commence and continue the discharge of the Cargo at the port of Cigading until completion in accordance with its obligations under the Charterparty.

2. Hongzhou will pay Delta Marine the sum of US$29,973.45, which represents outstanding hire due and owing from Richfall, in full and without deduction before the end of the banking day of 23 May 2007.

3. Hongzhou will duly perform the obligations of Richfall under the Charterparty, including but not limited to the payment of hire, up to completion of discharge of the Cargo.

4. All other matters whatsoever and howsoever arising between the Parties shall be settled under and in accordance with the terms and conditions of the Charterparty and save for the foregoing this Agreement is made without prejudice to the terms and conditions of the Charterparty.

5. This Agreement shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London.

DELTA MARINE CO., LTD.

Signed for and on behalf of Delta Marine Co. Ltd

Signed for and on behalf of Hongzhou Jinshan Industry Co. Ltd.




Exhibit B